UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RUFUS JAMES HAMPTOM, III        CIVIL ACTION NO. 10-cv-0990

VERSUS                          JUDGE WALTER

WARDEN LOUISIANA STATE          MAGISTRATE JUDGE HORNSBY
PENITENTIARY

**REPORT AND RECOMMENDATION**

**Introduction**

A Webster Parish jury convicted Rufus James Hampton, III ("Petitioner") and co-defendant Louis Hargrove, III of armed robbery, conspiracy to commit armed robbery, and aggravated second-degree battery. The trial judge sentenced Petitioner to 50 years for the armed robbery, 25 years for conspiracy to commit armed robbery, and 15 years for aggravated second-degree battery (all to run consecutively). The convictions and original sentences were affirmed on direct appeal. State v. Hampton, 865 So.2d 284 (La. App. 2d Cir. 2004), writ denied, 903 So.2d 452 (La. 2005). Petitioner also pursued post-conviction relief in the state courts.

Petitioner now seeks federal habeas corpus relief on the grounds that (1) his counsel was ineffective for not adequately pursuing an alibi defense and (2) the convictions for both armed robbery and conspiracy to commit armed robbery violate the Double Jeopardy Clause. It is recommended, for the reasons that follow, that the petition be denied.

**The Record**

The district attorney was directed to file a copy of the entire state court record. He made a filing that he represented was a complete record, but the transcript of the critical post-conviction evidentiary hearing and related rulings are, among other items, missing. Fortunately, Petitioner attached to his petition copies of the needed transcript and other helpful records and rulings. The district attorney is again reminded, as in co-defendant Hargrove's case (07-CV-1419), to ensure that a complete state court record is filed in habeas cases. The State's brief should also contain record references to the hearings and state court rulings related to the habeas claims.

**Relevant Facts**

Eldred Lowe, Jr. pulled into the driveway of his home in Minden about 9:00 p.m one evening. As he got out of his car, Lowe saw a small red sport utility vehicle ("SUV") stop at the end of his driveway. He could see from the light of a bright street lamp that the SUV was driven by a black male, and another black male was riding as the passenger.

The passenger, later identified as Petitioner, got out of the SUV. He aimed a pistol at Lowe, approached him, and demanded money. Petitioner grabbed Lowe and hit him with the pistol several times in the face and head, knocking Lowe to the ground and leaving a large gash on the top of his forehead and across his nose. Petitioner reached in Lowe's pocket and took a money clip holding $154 cash and several credit cards. Lowe heard Petitioner get back in the SUV, which sped away. Lowe's wife called the police and took her husband to the hospital.

Lowe gave the police a description of the SUV and his attacker, who wore a stocking cap. The police cast a shoeprint left at the crime scene, and the print included an unusual oval shape. The next day, a detective spotted a red Kia Sportage that matched the description given by Mr. Lowe. Co-defendant Hargrove was in the driver's seat, parked in a store parking lot. Petitioner came out of the store and got in the SUV. Police stopped the SUV for speeding.

Petitioner was wearing a skull cap like the one described by Mr. Lowe, but he removed it and put it in his pocket when the traffic stop was made. His tennis shoes, a K-Swiss model only recently introduced to the market and sold only at Dillard's stores, matched the unusual shoeprint from the crime scene. A consensual search of the SUV found a pellet pistol hidden in the engine compartment under the hood. DNA evidence taken from the pistol matched the DNA of the victim. Hargrove admitted that he and Petitioner had been in Minden on the night of the robbery. Petitioner gave a conflicting statement that he was not in Minden that night. The victim immediately identified Petitioner when shown a six-man photo lineup, and he said the Kia looked like the SUV involved in the robbery.

Police found a shopping list in the backseat of the SUV. Mr. Lowe's credit card records showed that his stolen card was used to purchase several items from a nearby Wal-Mart soon after the robbery. A surveillance recording from the Wal-Mart showed the red Kia SUV arrive in the parking lot at 9:00 p.m., just after the robbery. Two black males got out of the vehicle, and one of them had a black hat on his head. One of the men was wearing shoes with a unique red tip on the front, just like the shoes taken from Hargrove when he was

arrested. The recording showed the two men make purchases of the items on the shopping list, including a Tupac cassette that was found in the player of the SUV. Among the items found in the SUV was a price tag for a pair of Wrangler shorts purchased from the Wal-Mart; the bar code identified the shorts as one of the purchases the two men made with Mr. Lowe's credit card. (The forged signature of Mr. Lowe, Jr., is written on the credit card slips as Eldred Lowe III and Thomas Lowe II. Tr. 83. The superscript style of writing "III" and "II" bears a remarkable resemblance to the style in which Petitioner signs his name on pleadings.)

**Double Jeopardy**

Petitioner and his co-defendant were convicted of armed robbery, conspiracy to commit armed robbery, and aggravated second-degree battery. Petitioner, on direct appeal, did not squarely present a double jeopardy challenge to his convictions, but he did argue that double jeopardy principles did not allow consecutive sentences for both (1) armed robbery and (2) conspiracy to commit armed robbery. (Tr. 416). The appellate court stated summarily that the double jeopardy claim lacked merit because each crime involves elements not common to the other, and it went on to discuss at the length the propriety of consecutive sentences under state law. Tr. 473; State v. Hampton, 865 So.2d at 292.

Petitioner now presents a direct double jeopardy attack on the two convictions. The State argues that the claim was not properly exhausted, but it does not direct the court to Petitioner's writ application filed on direct appeal. If the claim was not presented in that application, it was not exhausted. O'Sullivan v. Boerckel, 119 S.Ct. 1728 (1999). The court has been unable to locate that document in the record. Given the potential for exhaustion by

Petitioner's argument to the appellate court, and the absence of all records needed to determine the issue with certainty, the better course is to examine the double jeopardy claim on the merits.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." The provision prohibits a state from punishing a person twice "for the same offense." Mitte v. U.S., 115 S.Ct. 2199, 2204 (1995). The Supreme Court, in determining whether two statutes punish twice for the same offense, asks whether each offense must contain an element not contained in the other. Blockburger v. U.S., 52 S.Ct. 180 (1932); U.S. v. Agofsky, 458 F.3d 369, 371 (5th Cir. 2006).

Louisiana courts often refer to Blockburger but more often employ what is called a "same evidence test." That state-law standard is broader in concept than Blockburger. See Sanders v. Cain, 2002 WL 32191037 n.25 (E.D. La. 2002); Tran v. Cain, 1999 WL 460774 n.27 (E.D. La. 1999).

Petitioner's memorandum cites Blockburger but largely bases the double jeopardy argument on the Louisiana same evidence test. Federal habeas applicants must claim violations of a federal constitutional right. Claims that the state courts improperly applied state law principles do not constitute an independent basis for federal habeas relief. Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991). Rather, a habeas application "shall not be granted with respect to a claim that was adjudicated on the merits in the state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner has not cited any Supreme Court decision that clearly established the same evidence test as part of federal double jeopardy law. The Supreme Court has actually "disclaimed any intention of adopting a 'same evidence' test" in double jeopardy cases. U.S. v. Felix, 112 S.Ct. 1377, 1382 (1992), citing Grady v. Corbin, 110 S.Ct. 2084, 2093 n. 12 (1990). And for federal law purposes, there is a long-standing "rule that a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes." Felix, 112 S.Ct. at 1384. See also Pinkerton v. U.S., 66 S.Ct. 1180, 1182 (1946), U.S v. Tovar, 2013 WL 2459855, __ F.3rd __ (5th Cir. 2013), and U.S. v. Pena-Rodriguez, 110 F.3d 1120, 1131 n.11 (5th Cir. 1997). Accordingly, Petitioner's double jeopardy claim lacks merit.[1]

**Ineffective Assistance of Counsel**

Petitioner argues that counsel was ineffective because he did not adequately investigate a potential alibi defense that Petitioner was working at The Real Pickle restaurant in Shreveport, about a 30-minute drive from Minden, at the time of the crime. The state court

---

[1] Co-defendant Hargrove presented the same double jeopardy argument, which Judge Stagg rejected in 07 CV 1419 based on a report and recommendation. Hargrove v. Warden, 2010 WL 2545197 (W.D. La. 2010). The Fifth Circuit denied a COA. This court did vacate Hargrove's conviction for conspiracy, but on the basis that his counsel was ineffective when he did not raise a double jeopardy argument under the Louisiana law same evidence standard. Petitioner did not exhaust or present that argument.

held an evidentiary hearing and appointed a different attorney to represent Petitioner. That attorney began the hearing by stating that he had contacted the owner of The Real Pickle, who said he did not have any employee records from that time, seven years earlier, and he had no independent recollection of whether Petitioner was working at the time of the crime.

Petitioner testified that he never had the opportunity to inform his appointed counsel, Leslie Kelly, about an alibi defense. He said Kelly never came to see him at the jail, and they saw each other only in court. Petitioner claimed that he wrote several letters to Kelly that should be in his file, but Kelly said he could not find the file, and no other copies were produced. Petitioner admitted that he did talk to counsel several times about pursuing a motion to sever, but he did not mention an alibi defense.

Attorney Kelly testified that on the day he was appointed he spoke with Petitioner in court and gave him his business card so that Petitioner could contact him. Kelly said it was his practice at the time to have appointed clients who were in jail call him collect because it was cheaper than him driving to the jail. Kelly said that he "certainly" told Petitioner to call him if he needed to talk. Kelly said he believed Petitioner called before the trial, but he admitted his recollection was vague. Kelly said he would have talked with Petitioner between six and twelve times before trial, including the Monday of the trial week, and he would have immediately acted by issuing subpoenas or investigating if Petitioner had named an alibi witness. Kelly said Petitioner's first mention of an alibi came on the second day of trial, but Petitioner did not provide any specific information such as a claim that his boss in Shreveport could testify he was at work, nor did he identify any other witnesses.

Antonio Pollard testified that he worked as a bus boy at The Real Pickle in May of 2001, when the crime happened, and Petitioner was employed as one of the restaurant's three cooks. Pollard described the various shifts that the three cooks shared, but he admitted he could not recall specifically whether Petitioner worked on May 30, 2001. He also admitted that even if Petitioner did work that day, it could have been on a shift that ended at 5:00 p.m., which would leave ample time to drive to Minden by 9:00 p.m.

Judge Cox found that Petitioner, despite having Mr. Kelly's phone number, did not tell Kelly about the possible alibi defense until the trial was underway. The two witnesses that were identified for the post-conviction hearing to support the defense had no recollection that would support it (although admittedly their recollection may have been fresher at the time of the trial in 2003). Accordingly, the ineffective assistance claim was denied.

The state appellate court set forth the two-pronged <u>Strickland</u> test and, noting the evidence from the hearing, found that Petitioner did not show that counsel's performance was deficient. The court added that, even if deficient performance were assumed, there was no prejudice given the overwhelming evidence at trial that included identification by the victim, videotape footage showing the defendants using the victim's credit card minutes after the robbery, and the other evidence that linked Petitioner to the crime scene. Petitioner applied for rehearing, and the court wrote that he "fails to offer anything that would support a claim that his lawyer's ineffectiveness had anything to do with his conviction in the face of overwhelming evidence of guilt." The Supreme Court of Louisiana denied writs without comment.

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id. The petitioner must overcome the limitations of Section 2254(d) "on the record that was before the state court." Cullen v. Pinholster, 131 S.Ct. 1388 (2011).

There was no direct evidence from Mr. Kelly or otherwise that he did much to explore the case with Petitioner or otherwise investigate potential defenses, but there was evidence

that Petitioner and Kelly met a number of times, and that Petitioner had the ability at any time to call Kelly and tell him about the purported alibi defense. Petitioner testified that he wrote letters, but there was no corroboration. Mr. Kelly testified that he would have definitely explored an alibi defense if Petitioner had mentioned it to him before trial. There were, therefore, credible evidentiary choices available to the state court to support its finding that Petitioner did not inform counsel of the alibi defense until trial was underway. Kelly testified that, even then, Petitioner never gave any specifics about the defense, and Petitioner himself did not clearly articulate the factual basis and supporting witnesses during his testimony.

Even if counsel explored the alibi claim, the evidence at the hearing gave little reason to believe it might succeed. Granted, the witnesses' recollections would have been fresher and payroll or other records might have been available if the defense had been explored soon after the crime rather than years later. But it is also reasonable to believe that if one of three cooks in a small business were charged with a serious crime that was said to have happened when one of the employees was at work, the employer and coworkers would have immediately realized that the cook could not have been the robber and would have alerted authorities that they must have the wrong man. That did not happen. And if the employer or coworkers believed the cook was at work at the time of the crime, but they did not step forward at the time of the investigation to clear a man they believed innocent, that would not be a fact they would easily forget.

The state court's decision regarding a lack of prejudice is also reasonable given the evidence against Petitioner and the very thin basis for an alibi that Petitioner worked that day

in Shreveport, especially when the scene of the crime was only about 30 minutes away. The state court's adjudication of this claim might be subject to some debate, but it was not an objectively unreasonable application of Strickland to the available facts, and it was certainly not one of the extreme malfunctions of the criminal justice system that would permit federal habeas relief.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for habeas corpus relief be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of July, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE